IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CASE NO. 1:16 CR 236 |
| Plaintiff | : JUDGE PATRICIA A. GAUGHAN |
| vs. | |
| **ADAM LIBBEY-TIPTON** | : **SENTENCING MEMORANDUM** |
| Defendants | |

Now comes the Defendant, Adam Libbey-Tipton, by and through his duly authorized attorney, William T. McGinty, and hereby submits the attached sentencing memorandum and attachments for the court's consideration.

Respectfully submitted,

\S\ William T. McGinty
**WILLIAM T. McGINTY (0009285)**
**McGINTY, HILOW & SPELLACY**
The Rockefeller Building, Suite 1300
614 West Superior Avenue
Cleveland, Ohio 44113-1306
Phone: (216) 344-9220
Fax:    (216) 664-6999

COUNSEL FOR DEFENDANT
ADAM LIBBEY-TIPTON

## **BRIEF**

On July 27, 2016, the Court named the Defendant, Adam Libbey-Tipton, in a two-count Indictment, and on January 18, 2017, the Court filed a three-count Superseding Indictment. Count One charged Receipt of Visual Depictions of Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C § 2252 (a)(2) and 2252(b)(1), Count Two charged Access with Intent to View Child Pornography, in violation of 18 U.S.C. § 2252(b)(2), and Count Three charged Possession of Child Pornography, in violation of 18 U.S.C. § 2252(A)(4)(B). On June 29, 2018, a jury found Adam guilty of all three counts. On August 29, 2018, the U.S. Pretrial Services and Probation Office in the Northern District of Ohio issued its Presentence Investigation Report (PSI).

The report set a Base Offense Level of Twenty-Two (22). Two (2) points were added because the material involved a prepubescent minor or a minor who had not attained the age of twelve (12). Five (5) points were added because Defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. Five (5) points were added because the offense involved six-hundred (600) or more images. Four (4) points were added because the offense involved material that portrayed sadistic or masochistic conduct or other depictions of violence. Two (2) points were added because offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material or for accessing with intent to view the material. Additionally, two (2) points were subtracted because the Defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor, and the Defendant did not intend to traffic in, or distribute, such material. The result is a Total Offense Level of Thirty-Eight (38), and a criminal history category of II, for which the guideline imprisonment range is two-hundred and sixty-two

(262) to three-hundred and twenty-seven (327) months, with probation, supervised release, and associated fines/restitution.

The United States Supreme Court held that the Sentencing Guidelines set forth by the United States Sentencing Commission are advisory. United States v. Booker, 543 U.S. 220 (2005). Accordingly, the Court typically uses a three-step process in determining what sentence to impose upon a defendant. First, the Court determines the proper advisory guidelines range. Gall v. United States, 552 U.S. 38, 49 (2007). Next, the Court will determine whether any departures from the advisory Guidelines range apply. United States v. Phelps, 366 F.Supp.2d 580, 586 (E.D. Tenn. 2005). In doing so, the Court considers arguments and motions filed by the parties for upward or downward departures under the Guidelines or the Sentencing Commission's policy statements. 18 U.S.C. § 3553(a)(4), (5). The Court must then identify the appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a). *Phelps*, 366 F.Supp.2d at 586. This determination is based on "an individualized assessment based on the facts presented." *Gall*, 128 S.Ct. at 597. The Court may either impose a sentence within the applicable Guidelines range, if such sentence is consistent with the Court's consideration of the factors laid out in 18 U.S.C. § 3553(a), or it may impose a non-Guideline sentence.

As has been pointed out by numerous courts, including some in the Sixth Circuit, the Sentencing Guidelines for child pornography, found in § 2G2.2, are not the product of the Sentencing Commission's professional staff and empirical evidence. United States v. Stern, 590 F.Supp.2d 945, 960 (N.D. Ohio 2008). Instead, Congress has repeatedly and without empirical analysis amended the Sentencing Guidelines to increase the penalties for child pornography offenses. U.S. v. McElheney, 630 F.Supp.2d 886, 892 (E.D. Tenn. 2009). As the court held in McElheney, "[D]espite increasing deviations from the child pornography Guidelines, the

Commission cannot take into account these deviations and revise the Guidelines to account for the reasons for the deviations. This has led in part to the Guidelines no longer being descriptive or predictive." *Id.*, at 893.

In child pornography cases, courts have increasingly imposed sentences below the recommended Guideline range. In 2011 for example, federal courts nationwide imposed sentences below the Guideline range in sixty-six (66) percent of cases. United States v. Marshall, 870 F.Supp.2d 489, 491 (N.D. Ohio, 2012). In addition, a recent study conducted in the Northern District of Ohio shows that nearly 40 percent of the sentences for child pornography offenses within the District were below the Guideline range. United States v. Syzmanski, 2009 WL 1212252 at *2 (N.D. Ohio, Apr. 30, 2009). Further, a 2010 survey of federal judges conducted by the United States Sentencing Commission showed that approximately seventy (70) percent of the federal bench considered the current sentencing regime for child pornography possession and receipt cases to be too severe, and over seventy (70) percent believed the mandatory minimum in receipt cases was too high. *See* U.S. Sentencing Comm'n, *Results of Survey of United States District Judges*, at 5 and 11 (2010), available at: http://www.ussc.gov/Research/Research¬_Projects/Surveys/0100608_Judge_Survey.pdf.

Variances from the Guideline range in child pornography cases are striking, with some courts imposing probationary sentences even though the Guidelines recommend significant prison terms. *See* United States v. Autery, 555 F.3d 864, 867-68 (9th Cir. 2009) (affirming probationary sentence when Guideline range was 41 to 51 months). Some courts have also imposed sentences that were well below the bottom of the Guideline range. For example, in United States v. Stall, 581 F.3d 276 (6th Cir. 2009), the Court upheld the District Court's sentence of one day in prison and ten years of supervised release for a defendant convicted of possession of child pornography.

In Marshall, the Court observed that the high rate of variances from the Guideline range "can be explained by the belief that tough sentences in these cases are punishing a defendant for something he or she has not yet done—and may never do—actual contact with children." *Marshall*, 870 F.Supp.2d at 491. As the Court further pointed out, under the Guidelines, "some of the recommended sentences for viewers can, with enhancements, be higher than those for actual predators." *Id.* In the instant case, some of the specific offense characteristics that operate to increase the Defendant's recommended sentence are present in nearly every case and therefore no longer operate to differentiate offenders based on the seriousness of their crimes.

For example, the Defendant's recommended Guideline sentence was increased by four points because the material portrayed sadistic or masochistic conduct or other depictions of violence. This enhancement applies even if "the judge is certain that the offender had no intention of receiving or possessing such material." *Marshall*, 870 F.Supp.2d at 495. A single file can trigger this enhancement. *Id.* In Marshall, the Court held that this enhancement "fails to identify and differentiate those with a penchant for deviant conduct from the less-culpable offenders. This is so because sadistic and masochistic conduct is defined broadly, and applies to any image that is likely to cause physical or emotional pain—even if no evidence of such pain or cruelty exists." *Id.* In 2012, this enhancement applied to 71.2 percent of cases. United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2017*, at page 45, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2017/Use_of_SOC_Guideline_Based.pdf (hereafter referred to as "USSC Offense Characteristics Report").

The Defendant also received a five-point enhancement because the offense involved 600 or more images. As the Marshall Court observed, this is a shockingly low cap, as each short video

clip can contain as many as 75 images. *Marshall*, 870 F.Supp.2d at 494. Further, this enhancement applies in 74.7 percent of cases. *USSC Offense Characteristics Report*, at 46.

In addition, the Defendant received two points because the material involved a prepubescent minor—an enhancement that applies in 94.1 percent of cases. *USSC Offense Characteristics Report*, at 45. The fact that these enhancements apply in the vast majority of child pornography cases operates to diminish their effectiveness, as they are essentially arbitrarily increasing the sentence of each and every child pornography offender, leading to extremely high sentences. After taking all of this information into consideration, the Marshall Court held that the Guidelines did not deserve controlling weight, and it instead applied the general sentencing factors laid out in 18 U.S.C. § 3553(a). The Defendant urges this Honorable Court to do the same.

The Court added two more points to the Defendant's Guideline sentence because the offense involved the use of a computer. As the *Marshall* Court observed, when the use of a computer enhancement was first introduced, only 28 percent of offenders used computers. *Marshall*, 870 F.Supp.2d at 494. Currently, nearly 95.7 percent of offenders use a computer, meaning this enhancement applies in nearly every child pornography case. *USSC Offense Characteristics Report*, at 46. Further, the enhancement "fails to distinguish defendants who are a threat to the community from those who are not, as the 'empirical data does not show that using a computer…is a more serious or culpable offense than viewing the same images if they had been received by another medium such as through the mail.'" *Marshall*, 870 F.Supp.2d at 494, quoting Troy Stabenow, *A Method for Careful Study: A Proposal for Reforming the Child Pornography Guidelines*, 24 FED. SENT'G REP. 2, 122 (2011).

Under 18 U.S.C. § 3553(a), sentencing courts must consider seven factors when sentencing a defendant:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)     the need for the sentence imposed—
(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)     to afford adequate deterrence to criminal conduct;
(C)     to protect the public from future crimes of the defendant; and
(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
(3)     the kinds of sentences available;
(4)     the sentencing range established by the guidelines;
(5)     any pertinent policy statements issued by the Sentencing Commission;
(6)     the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
(7)     the need to provide restitution to any victims of the offense.

This Section instructs courts to impose a sentence that is "sufficient, but not greater than necessary." If the Court sentences the Defendant to a sentence below the Guideline range, the Defendant will still be serving time in prison for his actions; he will not be getting a simple slap on the wrist. A significant prison term will serve as an adequate deterrent to the Defendant. Sentencing the Defendant to a lower prison term than is recommended by the Guidelines would fulfill the goal stated in 18 U.S.C. § 3553(a) to impose a sentence that is "sufficient, but not greater than necessary." The Defendant believes he can be adequately punished and sufficiently rehabilitated by serving a sentence that is lower than the one recommended by the Sentencing Guidelines.

Adam was born on August 11, 1986 to Stacey Irace, his mother, and Steve Raffaeli, his father. His parents' tumultuous divorce negatively affected him, and as a result, he lived with various different relatives in different households through the years. Adam was diagnosed with major depression in 2009, following a suicide attempt, for which he received treatment. Despite his limited time and resources, Adam accepted responsibility as the primary caretaker of his ailing grandmother, per her attorney's confident recommendation. Through the years, employers have

considered him a reliable and hardworking employee. A community of friends, family, and coworkers have expressed unwavering support of Adam. Several of Adam's supporters' letters and signatures are attached below (Exhibits A and B), each asserting evidence of Adam's good character.

                                                    Respectfully submitted,

                                                    \S\ William T. McGinty
                                                  **WILLIAM T. McGINTY (0009285)**
                                                  **McGINTY, HILOW & SPELLACY**
                                                  The Rockefeller Building, Suite 1300
                                                  614 West Superior Avenue
                                                  Cleveland, Ohio  44113-1306
                                                  Phone: (216) 344-9220
                                                  Fax:    (216) 664-6999

                                                  COUNSEL FOR DEFENDANT
                                                  ADAM LIBBEY-TIPTON

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Sentencing Memorandum was forwarded to Brian McDonough, Esq., Assistant United States Attorney, via the Court's electronic filing system, on this 5th day of October, 2018.

\S\ William T. McGinty
**WILLIAM T. McGINTY (0009285)**



Honorable Judge Gaughan,

    We are the friends and family that love and support Adam Libbey-Tipton, and we are the devastated community of individuals who write to you with heavy hearts about a verdict we feel is inappropriate and not at all in line with the character that he has demonstrated time and time again. We do not feel that the charges he has fought in this case are in the best interest of the public, nor are we convinced that the judgement he faced was in the spirit of the very laws used to prosecute him.

    The many hats Adam has worn throughout his life speak of a steadfast and compassionate character that is entirely undeserving of the accusations leveled against him; that of supportive son and grandson, fiercely protective older brother, loyal friend, and invaluable employee and colleague.

    As a son, he has provided a safe haven for his mother through a tumultuous divorce. We can also attest to the deference he's displayed for his grandparents. He has given up most of his time and often limited resources to care for his ailing grandmother over the last several years, never expecting anything in return for the manifold personal sacrifices he made in the process. The well-being and safety of his younger brothers and sisters are paramount to him, and it is no surprise Adam has won their mutual, continued admiration in light of the unconditional love and attentiveness he's shown them. As a friend and even ex-boyfriend, his assiduous commitment to taking care of the people in his life, both decades old and new, took the form of providing a home to those in need, chauffeuring, maintaining cars at his own expense, helping with moves, and being a dependable ally in times of distress. He has been an invaluable asset to multiple family-run businesses, and quickly became the favorite of a group of musicians who dedicated their free time to engaging people in the community with music and art. He is also backed by a woman who intends to marry him and start a family of their own, and she too can further speak to his character as a man who is neither salacious nor intent on violence.

    We who write to you today are the collateral damage of what we feel to be a wrongful conviction. We comprise the community he is alleged to be a danger to and a flight risk of, and we are not persuaded by either assertion by the government. A loving family is being torn apart, fiancee and friends are devastated and appalled at his incarceration, and a society sorely needing someone of Adam's integrity and skill sets is being inexcusably cheated. While we thank the jury for their participation in the judicial process, we come together today to beg your honor to reconsider their verdict. We fully expect and encourage Adam to ardently pursue his appeal. We are motivated by truth and will support him in exercising his right to maintain his innocence in the way the Constitution necessitates. It is our wish, as well as his, that he not be precluded from continuing to participate fully in the system of justice that makes this country so great.

Respectfully,

The family, friends, and individuals of the public who urge you to acknowledge the miscarriage of justice that occured in this case and dismiss this verdict on Adam's behalf.
(Please see signatures on reverse page.)

Hannah Bejamin 8/30/18
Girlfriend
15613 Ventnor Ave
Cleveland, OH 44135
(941) 830-5383

Stacey Libbey 09/30/2018
Mother
15664 Gifford Ct.
Strongsville, OH 44136
440.832.1255

Ebert C. Libbey
GRANDFATHER

Shirley A. Libbey
Grandmother
15664 Gifford Court
Strongsville OH 44136
(440) 238-3697

[signature]
Friend
24192 Westwood rd.
Westlake, OH 44145

Ricardo Mauero
Friend
12671 Walnut Hills Dr.
Apt 104
North Royalton, OH 44133

[signature]
Friend
15613 Ventnor Ave
Cleveland, Ohio 44135
216 526 4459

Marilyn Mauer
Family friend
6000 Thornton Dr
Parma, OH 44129
216-272-5811

Sharon Tipton
Brother
17603 Whitney Rd Apt 257
Strongsville, OH
216-574-9857

Nicole Cotone
ex-girlfriend
1100 Oakwood dr Apt B-12
Elyria OH 44035
(540) 419-6088

Ed Mauer / Sal M
20567 Hemlock Cir
Strongsville, 44185
216 577-0432
Close Family Friend

Jerry Bowyer (Owner)
Employer / Kicker's Pizza
15089 Snow Rd. Brookpark
Ohio, 44142

Sarah LaRue (Friend)
1291 Ranchwood Mayfield Hts OH 44124

Kaitie Fox (friend)
8750 Evergreen Dr.
Mentor, OH 44060



To the Honorable Judge Patricia Guaghan,

I am writing to you in regards to Adam Libbey-Tipton. I am a personal friend of his, and have known him for 17 years, since high school. I am personally shocked to hear that he was found guilty, and have my misgiving about the jury's decision. I am writing in hopes that you may show leniency towards him and consider his character in your sentencing.

While Adam is not without his faults, the Adam I know is overwhelmingly supportive of his family. He opened his home to his family when it was neither conveneint nor equitable for him. He provided a room for his brother Sean and his girlfriend Nichole for years. While Adam never shared details with me, I know that he made a priority of them having a place to live and food to eat over their contribution to the household.

Adam also housed his mother for a few months after her divorce. It's no secret to anyone who knows him that Adam has had a less than ideal relationship with his mother over the years. I found it a little surprising that he was so willing to accommodate her, given their past. From my perspective as a personal friend, I saw a strength of character I hadn't known to expect from him as he endured the friction of a man in his late 20s/early 30s living with his mother.

You may be aware that Adam was involved in the care of his aging grandmother. From what I am aware of, his family had argued to the point of litigation about care of his grandmother's estate. Adam regularly spoke about his frustration at being the only person who cared for his grandmother's wellbeing. I can personally attest to this because when his car was being repaired I had assisted him in errands relating to the care of his grandmother; driving to the grocery store on a few occasions, and driving him to her home when a caretaker was unable to be present. I was able to see first hand that Adam respected and cared for his grandmother and expected no reward or compensation.

For the years I have known Adam he has had a strong personality and is not without his faults, but I believe at the core of his person he is a loyal friend and family member. I do not believe Adam to be a violent person, nor to harbor nefarious intentions. I am of the opinion that Adam is no threat to society. I sincerely hope that Adam is shown leniency in his sentencing.

Tony Nunn
24192 Westwood rd.
Westlake OH, 44145