1          UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF OHIO
2              EASTERN DIVISION

3    ------------------------------X
     UNITED STATES OF AMERICA,    :  Case No. 1:16-cr-00236
4                                 :  Cleveland, Ohio
            Plaintiff,            :
5                                 :
         v.                       :  Tuesday, October 16, 2018
6                                 :  9:01 a.m.
     ADAM LIBBEY-TIPTON,          :
7                                 :
            Defendant.            :
8    ------------------------------X

9

10        TRANSCRIPT OF SENTENCING PROCEEDINGS

11      BEFORE THE HONORABLE PATRICIA A. GAUGHAN

12         UNITED STATES CHIEF DISTRICT JUDGE

13

14

15   Court Reporter:          Donnalee Cotone, RMR, CRR, CRC

16                            Realtime Systems Administrator

17                            United States District Court

18                            801 West Superior Avenue

19                            Court Reporters 7-189

20                            Cleveland, Ohio 44113

21                            216-357-7078

22                            donnalee_cotone@ohnd.uscourts.gov

23

24   Proceedings recorded by mechanical stenography, transcript

25   produced by computer-aided transcription.

```
 1     APPEARANCES:

 2

 3     For the Government:      BRIAN M. MCDONOUGH,

 4                              MEGAN R. MILLER,

 5                              Assistant United States Attorneys

 6                              801 West Superior Avenue

 7                              Suite 400

 8                              Cleveland, Ohio 44113

 9                              216-622-3965

10                              brian.mcdonough@usdoj.gov

11                              Megan.R.Miller@usdoj.gov

12

13     For the Defendant:       WILLIAM T. MCGINTY, ESQ.

14                              McGinty Hilow & Spellacy Co., LPA

15                              The Rockefeller Building, Suite 1300

16                              614 W. Superior Avenue

17                              Cleveland, Ohio 44113

18                              216-344-9220

19                              billy@mghslaw.com

20

21     For Probation:          Michelle Spaulding

22

23

24

25
```

|     |                                                              |
| --- | ------------------------------------------------------------ |
| 1   | MORNING SESSION, TUESDAY, OCTOBER 16, 2018                    |
| 2   | (Proceedings commenced at 9:01 a.m.)                         |
| 3   | - - -                                                        |
| 4   | DEPUTY CLERK:  All rise.                                      |
| 09:02:09  5 | THE COURT:  Please be seated.                        |
| 6   | Mr. Libbey-Tipton, you may approach the podium with counsel. |
| 7   | We're here in the matter of the *United States of*           |
| 8   | *America versus Adam Libbey-Tipton*, Case Number 16-cr-236.  |
| 9   | Present in court is Mr. Libbey-Tipton; is that               |
| 09:02:34 10 | correct, sir?                                        |
| 11  | THE DEFENDANT:  I'm here, Your Honor.                        |
| 12  | THE COURT:  Represented by his attorney,                     |
| 13  | Mr. Bill McGinty.                                            |
| 14  | MR. McGINTY:  Good morning, Your Honor.                      |
| 09:02:43 15 | THE COURT:  Good morning.                            |
| 16  | On behalf of the Government, Mr. Brian M. McDonough          |
| 17  | and Ms. Megan Miller, and on behalf of probation,           |
| 18  | Ms. Michelle Spaulding.                                      |
| 19  | Sir, you're here today for purposes of sentencing.  On       |
| 09:02:57 20 | June 29th, a jury returned a verdict of guilty on all |
| 21  | counts.                                                      |
| 22  | At that time, I referred your matter to the probation        |
| 23  | department for a presentence investigation report.  I have   |
| 24  | that report before me.  I have thoroughly reviewed it.       |
| 09:03:10 25 | Have you had an opportunity to go over this report  |

1    with Mr. McGinty?

2              THE DEFENDANT:  I've had an opportunity,

3    Your Honor.

4              THE COURT:  According to your report, sir,

09:03:19  5    your base offense level is 22.

6         Two levels are deducted because your conduct was

7    limited to the receipt or solicitation of material involving

8    the sexual exploitation of a minor, and you did not intend

9    to traffic in or distribute such material.

09:03:40 10         Two levels are added in that the material involved a

11   prepubescent minor, or a minor who had not attained the age

12   of 12.

13        Four more levels are added in that the offense

14   involved material that portrays sadistic or masochistic

09:03:57 15   conduct or other depictions of violence or sexual abuse or

16   exploitation of an infant or a toddler.

17        Five levels are added in that you engaged in a pattern

18   of activity involving the sexual abuse or exploitation of a

19   minor.

09:04:09 20        Two levels are added in that the offense involved the

21   use of a computer, interactive computer service, et cetera.

22             Five levels are added due to the number of images.

23        There are no victim-related adjustments, no

24   adjustments for role in the offense or obstruction of

09:04:27 25   justice, no Chapter 4 enhancements, no adjustment for

1    acceptance of responsibility, for a total offense level of

2    38.

3         You have two criminal history points, which

4    corresponds to a criminal history category of II.

09:04:45 5         Mr. McDonough, Ms. Miller, let me turn to you first.

6         First of all, am I correct that you do not have any

7    objections to the manner in which the guidelines have been

8    applied?

9              MR. McDONOUGH:  That is correct, Your Honor.

09:04:59 10              THE COURT:  And, Mr. McDonough, this Court

11    does, in fact, note that it is your intention to dismiss --

12    or ask this Court to dismiss Count 3.

13         Am I correct?

14              MR. McDONOUGH:  That is correct, Your Honor.

09:05:16 15              THE COURT:  And at which point in time would

16    you like to do that?

17              MR. MCDONOUGH:  We would be happy to do so

18    now, Your Honor.

19              THE COURT:  All right.

09:05:22 20              MR. McDONOUGH:  The Government would move to

21    dismiss Count 3.

22              THE COURT:  And I'm going to assume,

23    Mr. McGinty, there is no objection.

24              MR. McGINTY:  No objection, Your Honor.

09:05:29 25              THE COURT:  I will, in fact, dismiss Count 3.

1    And, Mr. McGinty, turning to you, the Court notes you

2    do not have any objections to the manner in which the

3    guidelines have been applied; is that correct?

4                   MR. McGINTY:  Yes, Your Honor.

09:05:41  5                   THE COURT:  I do, in fact, agree with the

6    manner in which the guidelines have been applied.

7         I, therefore, find that the total offense level is a

8    38, criminal history category is a II, which puts the

9    defendant in an Advisory Sentencing Guideline range of 262

09:05:59 10   to 327 months.

11        On the issue of sentencing, Mr. McGinty, should I turn

12   to you first, sir, or would you like me to turn your client

13   first?

14                   MR. McGINTY:  Judge, if I may go first.

09:06:12 15                   THE COURT:  Of course.

16                   MR. McGINTY:  And what I'd like to do is start

17   off.  Is that okay?

18                   THE COURT:  I'm sorry, Mr. McGinty.  Let me

19   mention that you did, in fact, find a very thorough

09:06:21 20   sentencing memorandum, and I want to assure you and your

21   client that I have thoroughly reviewed it.

22                   MR. McGINTY:  Thank you very much, Your Honor.

23        Judge, I would just like to -- yeah, in -- first of

24   all, acknowledge the people that came down here today to

09:06:33 25   support him.

1          Judge, the first person that -- his grandfather,

2     Ebert Libbey, is present; his mother, Stacey Libbey; his

3     brother, Tim Lipton [sic] -- is Shaun here?  Shaun Lipton

4     [sic] is present.

09:06:48  5                    THE DEFENDANT:  Tipton.

6                    MR. McGINTY:  Tipton.  I'm sorry.

7          Nickey Cotone, his former girlfriend from when he was

8     very young; Ed Manero [sic] --

9                    THE DEFENDANT:  Marrero.

09:06:57 10                    MR. McGINTY:  Marrero.  Kaitie Fox, a friend;

11    Adam Benjamin, which is Hannah, his girlfriend's, brother;

12    Ilena Benjamin, Hannah's grand- -- is it grandmother?

13                    THE DEFENDANT:  Yes.

14                    MR. McGINTY:  Marilyn Marrero, Ed's mom;

09:07:13 15    Lexy Smolka, a family friend.  And I don't know -- Sue Way

16    is here, which is Ed's aunt.  And Rick Marrero --

17         Did Rick make it in time?

18         He's not here, Judge.  But these people have come in

19    support.  Many of them have signed a letter, which is a part

09:07:27 20    of the record as well.

21         And, Judge, I think it's important that we stand here

22    for sentencing today and, unlike other cases where we have

23    very serious offenses that go on, I have nobody in the

24    courtroom, not even my client's mother.

09:07:41 25         Here I've had family support throughout the case.

1  Most of them were here -- or not most of them, but many of

2  them were here for a good part of the trial.

3  Judge, when we were set for sentencing, I have two

4  letters that I would like to read briefly, and the reason

09:07:54  5  why I'm reading them here is because of the change in the

6  date, one person was not able to rebook a flight to come

7  back in, and that's from is uncle.  It's a short letter, if

8  I may.

9  THE COURT:  Of course.

09:08:03 10  MR. McGINTY:  "To the Honorable Judge" --

11  "Chief Judge Patricia A. Gaughan.

12  "My name is Frank Raffael.  I am Adam's uncle.  I have

13  known him my entire life.  We dug holes in the sand at

14  Kitty Hawk when he was a boy.  As an adult, I've seen him

09:08:16 15  repair almost any car problem and compose sonatas.  I can't

16  reconcile the young man I know with the circumstances today.

17  "My close relationship with Adam became closer over

18  the matter of my mother's care.  When my older brother

19  Robert passed away in '15, Adam filled his role as my

09:08:33 20  mother's primary caregiver.  He stepped up and took 24/7

21  weekend shifts, sacrificing his own agenda.  Adam had

22  already been a key caregiver for years before that, and he

23  accepted the added responsibility easily and without doubt

24  or hesitation.

09:08:49 25  "Adam's relationship with his mother (his grandmother)

had slowly transitioned from student to caregiver over the past ten years as my mother developed dementia.  All told, Adam cared for my mother for over six years.

"I live in Texas, and I visit my mother here in Ohio every month.  Back in '15 and early '16, I put Adam in charge of my mother's daily expenses.  He also managed doctor visits, coordinated with other caregivers' schedules, cooked, ran errands, and cared for her in every way.  I have no words to express my deep gratitude.

"As my mother's dementia progressed in '15, I eventually filed for guardianship, which was contested by my surviving siblings.  To avoid appointment of an independent guardian, my mother's attorney, Joseph Gambino, suggested that Adam become her guardian.  He made this suggestion after careful consultation with the Probate Court caseworker and with Magistrate Janet Colaluca.  They discussed at length Adam's prior conviction and still concluded he would be the best guardian for her.

"Why?  In Gambino's words, 'It was apparent in the judge (in the prior case)...he didn't believe the evidence.'

"The 2015 raid on Adam's home by the FBI and subsequent house arrest in 2016, obviously changed the plan the Probate Court had for my mother's guardianship.  Today, when my mother asks about him, I tell will tell her a white lie that he" -- "why he can't visit her.

1    "The probate judge wasn't the only one who had trouble

2    believing this prior conviction.  When Adam still had

3    weekend caregiving duties in 2016, his young stepsisters

4    would come and stay at Mother's house, sometimes under

09:10:27  5    Adam's sole supervision.  Why were the parents so trusting

6    of Adam?  How can we reconcile these facts and decisions?

7    What is the underlying truth not being discovered?

8        "The Court has identified the current court case as

9    complex, yet through two years of hearings and continuances,

09:10:43 10    my nephew was unable to engage the services of experts

11    needed to exonerate himself of these charges.  For the

12    entire time, Adam talked of little else, pinning his hope on

13    being able to present a defense with the appropriate expert

14    testimony.

09:10:56 15        "As the Court is aware, my nephew is indigent.  There

16    is no small part" -- "There is no small part related to his

17    home incarceration and lengthy trial process.

18        "It is my hope that the Court will see the need for

19    further investigation, or at least allow this young man to

09:11:10 20    rebuild his own means to appeal the conviction in a

21    relatively safe environment.

22        "Sincerely, Frank."

23        Judge, the other one that couldn't be here today

24    because of work scheduling was Kickers, where Adam worked as

09:11:27 25    a -- which is a Pizza & More restaurant in Cleveland.

1       "My name is Jerry Bowyer and would like to the speak

2   to the character of my former employee Adam and the effect

3   he had on my business and family in hopes that he might" --

4   "it might influence the Court's decision during this

09:11:41  5   sentencing.

6       "I did not know what to expect when I hired Adam a few

7   years ago as a delivery driver for Kickers, the family

8   restaurant I own and operate in Brook Park.  His attitude

9   was immediately impressive, but you never know as an owner

09:11:55 10   what to expect when you're hiring.

11       "In my time as a business owner, 25 years this July,

12   I've never met anyone more reliable, more excited about

13   pizza, and more dedicated to doing good work.  His work

14   ethic is admirable, and he impressed everyone after a very

09:12:09 15   short time working for me.

16       "Adam was always respectful, got along well with all

17   of his colleagues, handled problems professionally, and my

18   family was very quickly endeared to him.

19       "My customers noticed the impact Adam had on my

09:12:25 20   business as well.  During Adam's shifts, I never failed to

21   receive compliments about what a respectable, kind, and

22   courteous young man he was, at least two or three times a

23   week during the time he was working for me, something I've

24   not experienced of a driver in my 25-plus years of running a

09:12:40 25   business.

1    "When Adam told me about his prior conviction, I took

2    the time to read over the transcripts in the case.  I

3    was hard" -- "it was hard" -- I'm sorry -- "I was not hard

4    to see through the conflicting stories and lack of evidence.

09:12:52  5    Adam was treated unfairly in that case, as I believe he has

6    been in this one.  These charges do not align with what I

7    know of Adam's character as an employee, and it does not

8    align with what I know of Adam as a friend.

9    "I have welcomed him into my family without fear or

09:13:08  10    reservation for the safety of my kids or grandkids, and I

11    know Adam to be a man of upstanding honesty and kindness.

12    It shows in the way he takes care of his family, his

13    friends, and the way he spares no expense to help his

14    coworkers.  On more than one occasion, he has given up his

09:13:27  15    time to work on my employee Evelyn's car for free so that

16    she could continue to work reliably.

17    "He has been an asset to my business.  He has been

18    family.  His incarceration will be a loss for more than just

19    the people who are able to be in the courtroom today.

09:13:42  20    "I deeply regret that the rescheduling of this date

21    makes it impossible for me to be here, but I would like to

22    make every attempt to support him as he appeals his

23    conviction.

24    "Respectfully, Jeffrey Bowyer."

09:13:54  25    THE DEFENDANT:  Jerry.

1    MR. McGINTY:  I'm sorry.  Jerry.

2    Judge, thanks for letting me read those letters.  They

3  had planned on being here, but they were unable to be here.

4    Next, Judge, if I could, I'd like to present at this

09:14:07 5  time his girlfriend, Hannah, to speak on his behalf and to

6  summarize for the family.

7    All right.  Hannah Benjamin to the -- come up, then,

8  please?

9         THE COURT:  Certainly.

09:14:16 10         MR. McGINTY:  Shall we step to the side?

11         THE COURT:  Please.  And she can come to the

12  podium.

13         MS. BENJAMIN:  Good morning, Your Honor.

14         THE COURT:  Good morning.

09:14:34 15         MS. BENJAMIN:  I hope you can forgive me.  My

16  throat is a little scratchy from a cold.

17         THE COURT:  No problem.  Mine as well.  No

18  problem.

19         MS. BENJAMIN:  Your Honor, it's my hope that

09:14:48 20  today I can impart to the Court the essence of Adam's

21  character, what a necessary pillar he is to the well-being

22  of his family and friends, and how he is defended by a

23  community of people who vehemently protest the idea he poses

24  any danger to the public.

09:15:03 25    Adam is a loving son and grandson, a caring brother,

1    an unwavering friend, a reliable nephew, and an

2    indispensable asset to colleagues and employers.

3        He is a devoted man.  He is the man that I intend to

4    marry.  And the people you see in the courtroom are just a

09:15:18    5    few in a well-deserved support system that will be

6    devastated by his needless incarceration.

7        I met Adam while volunteering for a community

8    orchestra in Cleveland.  He was an oboist and I was a

9    cellist, and on my first day, he struck me with his kindness

09:15:30    10    and candor.

11        We bonded over our mutual love of music, and it didn't

12    take me long to realize that he had made that same

13    impression upon every student there, ranging from ages 16 to

14    85 years old.

09:15:42    15        He had earned the admiration of an entire group of

16    musicians, and his honesty, dependability, and compassion

17    has influenced everyone I've encountered since our

18    relationship began.

19        The accusations he faces now are a stark departure

09:15:54    20    from the character he demonstrates every day.

21        Adam never hid his prior conviction from me.  He has

22    always been open and forthright with everyone, and continues

23    to maintain his innocence.  He will always permit anyone who

24    asks about his case to draw their own conclusions based on

09:16:08    25    facts.  I didn't need the benefit of transcripts, video

1  interviews of his cousins, and firsthand accounts from his

2  family to be convinced that he did not commit the crime he

3  was convicted of in 2011.  Those details only solidified my

4  confidence in his wrongful conviction.

09:16:23 5  Never have I felt that Adam's intentions with me or

6  anyone else were violent or lascivious in nature.

7  Never did I consider the way he spent his free time as

8  suspect or motivated by malintent.

9  Never in my life have I met a man who has treated me

09:16:36 10  with more love and respect.

11  I moved here from Florida to distance myself from an

12  abusive home, and I constantly lamented over how I missed my

13  scattered siblings.  That, too, was something Adam and I

14  bonded over:  our shared, fierce protectiveness over our

09:16:47 15  younger brothers and sisters.

16  In every estimation, Adam has distinguished himself to

17  me and many others as a man of resolute integrity.  His

18  devotion to his family and friends is steadfast, and his

19  altruism for the people he interacts with in the community

09:17:02 20  is unyielding.

21  Our first dates didn't often conclude without stopping

22  to perform an emergency repair on a friend's car, lending

23  limited resources to the aid of friends, or providing for

24  the grandmother he has spent years diligently caring for, as

09:17:15 25  she fell ill to the symptoms of dementia.  Adam has always

done these things at great expense to himself and asked for
nothing in return.

His grandmother's health deteriorated exponentially in
the years Adam has been under home incarceration pursuing
his trial.  His arrest was the sole catalyst that spurred
her relocation from the comfort and dignity of her home to a
neglectful nursing facility.  She is just one who suffers
acutely because of this case.

Adam's sisters also stand to lose a much-needed role
model and a guide in the incredibly confusing and
frustrating transition from adolescence to adulthood.

Over the last two years, he's devoted most of his
energy helping me maintain his defense and our home, and
dedicated what little he had left to composing a collection
of musical works meant for his younger sisters, Anna and
Audrey.

He did not fail to keep his promise and create
something beautiful and challenging for them, something to
remind them just how much they are capable of by working
hard and bettering their minds.

To his former employer, Jerry Bowyer, Adam became an
integral part of his family business.  He lent cars and his
repair skills to colleagues in need without personal gain.
He worked hard to be an honest and dependable employee, and
he was held in the highest regard by Jerry's children and

1   grandchildren.

2       These tender moments I have witnessed firsthand, as

3   I've had the pleasure of meeting those coworkers and their

4   families.  Jerry, too, will lose family to this conviction.

09:18:35 5      I've seen for myself the evidence Adam was confronted

6   with during trial.  I was horrified at the content of the

7   government website.  The unconscionable images depicted on

8   that website were never recovered on any of Adam's devices,

9   and I remain unconvinced that anyone was endangered or

09:18:49 10  victimized in this case beyond the display of that website's

11  content.

12      The physical evidence I witnessed myself was limited

13  to forensically recovered images depicting young women

14  taking selfies.  I saw images strikingly similar to those

09:19:04 15  one doesn't have to Google too extensively to find for

16  themselves.

17      I belong to a generation that grew up with cell phones

18  and social media, and I'm not so far removed from high

19  school that I can't remember the countless times friends and

09:19:14 20  classmates took revealing pictures of themselves.  They took

21  them in school bathrooms, they took them in their bedrooms,

22  they took them for their boyfriends, and for their own

23  gratification.

24      I don't believe the Government's attempt to draw a

09:19:23 25  parallel between violent depictions of child abuse -- excuse

1    me?

2                    MR. McGINTY:  Slow down.

3                    MS. BENJAMIN:  I'm so sorry about that.

4        I don't believe the Government's attempt to draw a

09:19:33  5    parallel between violent depictions of child abuse and

6    images of teenage girls, whose ages cannot be determined by

7    a glance, serves the ultimate goal the laws in this case aim

8    to achieve; that is, to deter child exploitation.

9        I believe that the abhorrent subject matter inherent

09:19:50 10    in the Government's accusations, along with the surprising

11    testimony of Nicole Morabito, the fiancée of Adam's brother

12    Shaun, inferred guilt where none could otherwise be found.

13        Nicole has always been welcome in our home and the

14    homes of Adam's family for birthdays, for holidays, for

09:20:05 15    parties and gift exchanges.

16        For several years, including after the FBI raid, Adam

17    had opened his home to Shaun and Nicole without Nicole ever

18    contributing to the household in any significant way,

19    financial or otherwise.

09:20:17 20        Words cannot express the devastation and heartbreak

21    Adam and I experienced at hearing her unexpected testimony

22    and learning of the report she had attempted to keep

23    anonymous from everyone, including her fiancé, Shaun.

24        Her testimony was delivered just minutes after having

09:20:31 25    a pleasant, intimate lunch with us; a lunch we shared with

1   Adam's mother, Stacey; Adam's brother, Shaun; and our friend

2   Kaitie, all people who are in this courtroom today, all

3   people who are in despair that she has been so close to us

4   during the last two years, often a part of our family's most

09:20:47  5   private meetings to discuss Adam's case.

6       Shaun was crushed when prosecutor's offered Nicole a

7   ride home after her testimony, knowing the extent of the

8   damage and suffering she had caused an entire family.  She

9   told no one, not even her fiancé, what she was planning to

09:21:00  10  do.

11      Adam has dedicated his life to artistic pursuits meant

12  to help and make others happy, not to cause harm to anyone.

13  His ambitious creativity manifests itself daily in the many

14  projects he works on.  He fits the role of composer,

09:21:15  15  inventor, innovative mechanic, video game author, and

16  computer repair specialist.

17      These charges stand in gross contrast to Adam's

18  character, both in the way he lives his life and how he does

19  well by the people who know him.

09:21:27  20      I believe wholeheartedly in the essential role a jury

21  plays in the pursuit of justice, but I ask Your Honor to

22  acknowledge that this is a system not without its flaws and

23  inherent biases.  It is possible for a person to be found

24  guilty of a crime they did not commit.  It is possible that

09:21:42  25  the laws in this area are not evolving with new social

1 norms.

2 I ask the Court to consider how these biases skewed

3 the facts in this case, alongside Adam's strength of

4 character and the many family and friends advocating for

09:21:53 5 him.

6 I stand by him without reservation, and I will fully

7 support him as he pursues his appeal and continues to

8 participate in what Your Honor has often referred to as the

9 greatest system of justice in the world.

09:22:04 10 Thank you.

11 MR. McGINTY: Thank you.

12 Judge, now I'd like to have Adam speak.

13 THE COURT: Sure.

14 THE DEFENDANT: Good morning.

09:22:19 15 THE COURT: Good morning.

16 THE DEFENDANT: I'd like to begin by first

17 just saying that I'm appreciative of the service that the

18 jury provided, even though I do not agree with their finding

19 of a guilty verdict.

09:22:32 20 I believe that my case presented a desperate need for

21 crucial development in certain areas of law, and it's my

22 hope that our participation thus far will serve to spearhead

23 this much-needed evolution.

24 With that being said, I will say that "horrendous" is

09:22:47 25 not a strong enough word to describe the content of the

1  government website that was displayed in this courtroom.

2      My very stern intolerance for the preservation of such

3  material is evidenced by the Government's employment of the

4  most advanced forensic techniques on every one of my

09:23:06  5  devices, even those which date back as far as my own

6  childhood.

7      In contrast to myself, the evil abusers of children do

8  not concern themselves with the conscientious deletion of

9  questionable material, as Ohio BCI has scientifically proven

09:23:24 10  me to have done on my own accord when I worked as a

11  hard-drive recovery technician in 2006.

12      This contrast between a criminal's behavior and my own

13  is not one of my own assertion, but is rather the shared

14  expert opinion of behavioral and psychological specialists

09:23:42 15  that have been tasked by this Court with my treatment and

16  evaluation for the past two years.  The services provided by

17  these mental health professionals is indispensable, and it

18  was my privilege to have such knowledgeable and competent

19  personnel made available to me.

09:23:59 20      I believe very strongly that the men and women of this

21  profession stand to offer important insights to us all, not

22  the least of which, Your Honor, as I have been informed,

23  that there does exist today a brain image scan examination

24  that can, within a very small margin of error, determine

09:24:20 25  whether or not an individual will have any propensity for

1   child sexual abuse or response to pornographic materials

2   involving children.  I have asked repeatedly that such a

3   test be performed on me, to no avail.

4       Such a test would grant me an opportunity to prove to

09:24:39 5   everyone that I am as wholly opposed to and sickened by

6   child abuse as any other person of good conscience, and that

7   a terrible mistake has taken place over the course of the

8   investigation.

9       I ask again today that I not be precluded from this

09:24:58 10  kind of examination that mental health professionals have

11  told me about.  Without any doubt, the results would show

12  just how regrettable it is that my skills and abilities have

13  come under such scrutiny, rather than called upon to assist

14  with the combating of actual abusers and the dubious

09:25:17 15  distributors that manage to evade justice.

16      Your Honor, if I was ever called upon for such a

17  meaningful purpose, I would dedicate more of myself to that

18  end than even my own vindication.

19      And at this point, I'd like to thank my attorney,

09:25:36 20  Mr. McGinty, whom I think said it best when he stated in

21  trial that There is nothing to connect the defendant to the

22  government website and its material.

23      I'd like to thank Your Honor, Judge Gaughan, for her

24  wisdom and discretion; my probation officer,

09:25:52 25  Christine Lawrence, for her professionalism; and my

1   psychiatric specialists, Dr. Faust, Logan Johnson, and

2   Alexander Durain (phonetic), whom I hope will have a

3   stronger role in the future of jurisprudence.

4        Lastly, I'd like to thank my family and friends and

09:26:11  5   everyone behind me for giving me their unending support

6   throughout this ordeal, even sometimes at the risk of

7   suffering the same prejudices of paranoia as I have.

8        And please let me express my apology and my love to

9   dear Hannah, who has chosen to endure this nightmare

09:26:32 10   alongside me with selfless resolve.  I'm forever wounded by

11   the way her heart breaks.

12        Thank you, Your Honor.

13             MR. McGINTY:  Thanks, Judge.

14        In summary, I would say that I've known Adam for a

09:26:46 15   couple years, and I think that at least we have a flavor for

16   people that have known them an entire life, the other part

17   of which we didn't hear in the courtroom:  about his love

18   and care for his family and friends or the way he helped

19   people, especially his grandmother; the way that the people

09:27:05 20   were staying at the house that need to stay at the house.

21        What I would say at the end, Judge, is that you have a

22   difficult job to do.  And as my client indicated, he thanked

23   you for everything you did in this courtroom.

24        This was a difficult trial.  This was -- anytime that

09:27:23 25   we have to display child pornography in a courtroom, I think

1    society suffers; and in this case, it was necessary to do

2    it.

3          And I'd lastly like to say I think that the Government

4    did it in a very appropriate way, the way they displayed it,

09:27:41  5    so that it wasn't -- I would say here that the pornography

6    was shown, but in such a way that it wasn't outrageous or in

7    the face of the jury.  I think it was done as best it could

8    possibly be done in a respectful way, and I think the record

9    should show that as well.

09:27:58 10          And, Judge, I know that you have the -- as the

11    presiding judge in the United States District Court for the

12    Northern District of Ohio, you take your job seriously, and

13    I understand you apply the guidelines as you see fit.  And

14    we will respect the sentence that you provide here in a

09:28:15 15    short period of time.

16          Lastly, I will say before I sit down -- I will sit

17    down -- is that, you know, individuals that don't work in

18    the field of law have impressions that aren't necessarily

19    maybe the correct law.

09:28:31 20          I don't think that they were meaning to demean the

21    law, and I don't think they were meaning to demean the Court

22    or the U.S. Attorney's Office, but I think that's the way

23    they felt.  And I hope the Court and the prosecutor take it

24    in the expression that that's the way they see things.

09:28:46 25    Okay?  Not that they're lawyers.

1          And with that, I thank the Court for the opportunity

2    to address you.

3               THE COURT:  Mr. McDonough, Ms. Miller.

4               MR. McDONOUGH:  May it please the Court,

09:28:56 5    Your Honor.

6          The Government asked for a guidelines sentence in this

7    case of anywhere between 262 and 327 months.

8          In fashioning a sentence, the Government asks the

9    Court to consider the 3553(a) factors, the nature and

09:29:11 10   circumstances of the offense.

11         This Court is aware of the conduct for which the

12   defendant was put on trial, for which he was convicted.

13   What is telling, though, is the timeline of the conduct.

14         For Count 1, which is the receipt of numerous computer

09:29:34 15   files of sexually explicit conduct, that date range dates

16   from October 26th of 2006 through August 4th of 2015.

17         And what is telling about that almost nine-year

18   timeline is looking at that in the context of the

19   defendant's behavior, because he was charged in 2010 with

09:30:02 20   rape and gross sexual imposition of his cousin, and he

21   was -- that conduct had occurred in the month of July 2005.

22   At that time, that victim was three years old, just before

23   she turned four, and he was approximately 19.

24         So this defendant's collection of child pornography

09:30:22 25   began forensically, as far as we can go back, a year after

1    he committed that offense.  And it continued during the

2    course of his -- of his trial, and as a result of his

3    sentence for that 2010 conviction, that continued while he

4    was even on probation.  It continued all the way through

09:30:47 5    August 4th of 2015.

6    And child pornography offenses inherently involve the

7    sexual abuse and exploitation of children, and what's

8    telling is that for the defendant to access -- and now we're

9    going to Count 2 -- the Playpen website from November 6th of

09:31:04 10    2014 to March 5th of 2015 -- we heard from Special Agent

11    Dan Elfin, Special Agent Lisa Hack, and the FBI, what it

12    would take to get to this website.  This wasn't simply

13    Googling and landing on something.

14    This ended up going onto the Darknet and it ended up

09:31:26 15    going to a specific site.  And it also ended up going

16    through various warning pages of, Don't put your identity,

17    don't put your e-mail address, to go ahead and create a fake

18    log-in so that you could go through all of these affirmative

19    steps so that when you got there, you could see the whole

09:31:47 20    panoply of different types of sexually exploitive material,

21    and whether you had an interest in toddlers or

22    prepubescents.

23    And in this case, we have 872 images on the website

24    that he accessed on his own hard drive, detailing, as

09:32:06 25    referenced in the PSR, children that are seven years old and

1    nine years old being penetrated by adult males.

2         This collection, for the length of time, for the

3    amount of effort and access to get to the site, to go ahead

4    and log on, puts him in the nature and circumstances of him

09:32:27  5    being a very dangerous offender.  Not only does he have the

6    prior conviction, but he also has this collection in

7    accessing it, which makes him a risk and a danger.

8         Looking at the severity and the number of those

9    images, those 872 involving the penetration, this defendant

09:32:46  10    has engaged in that marketplace.  He has engaged in going on

11    that site, and by he participating in that involves the

12    increased production of child pornography for around the

13    world.

14         He was -- as part of this operation, he was one of a

09:33:04  15    number of users that the FBI ended up identifying worldwide.

16    In fact, when the FBI executed the search warrant at his

17    house and asked for him to go ahead and allow for his

18    computer to be accessed, for him to give the password, the

19    keys to his encryption, he refused.  He refused to give the

09:33:26  20    key as to what was on there.  He claimed that he had video

21    of him having sex with his girlfriend on there.

22         It was only after the FBI was able to look at the FBI

23    portion of the government-controlled website that we were

24    able to go ahead and look to see exactly what the defendant

09:33:47  25    had accessed, the number of hours that he accessed the site,

1    the specific pages he went to, and the fact that this

2    computer, which was encrypted, in Government's Exhibit 1, in

3    his bedroom.

4        In addition, we did have the eyewitness testimony that

09:34:03 5    said, yes, not only was the defendant on his computer, but

6    then he also asked others, How old do you think she is?  How

7    old do you think she is?  How old do you think she is, on

8    that.

9        Your Honor, in looking at deterrence, two types of

09:34:17 10   deterrence, we're asking for a general deterrence.  Severe

11   penalties do have a general deterrence for those who

12   possess, view, and receive child pornography.  It deters the

13   further production, and general deterrence is important.

14       There's also some specific deterrence, specific

09:34:37 15   deterrence against this defendant, for him, who obviously

16   has a sexual interest in children, who has received these

17   images, and has a high rate of recidivism.  The likelihood

18   of recidivism increases when someone is looking at deviant

19   pornography, such as child pornography.

09:35:01 20       In this case, we do have him committing a hands-on sex

21   offense and then continuing with child pornography, a vast

22   collection, that certainly goes ahead and supports a

23   guideline sentence in this case.

24       In the sentencing memorandum, the defense did mention

09:35:21 25   the variances by courts that they have done, according to

1    the guidelines in this district and throughout the country.

2         However, the most recent child pornography report from

3    2012, certainly does not read to an endorsement of generally

4    lowering guideline ranges.  If anything, Congress has

09:35:49 5    continued saying that raising minimums and, according to the

6    Child Protection Act of 2012, doubling the maximum penalty

7    is consistent with the longstanding pattern of Congress to

8    gradually increase penalties for child pornography offenses.

9    And that has continued on, Your Honor.

09:36:09 10         For those reasons, we would ask for a guideline

11    sentence in this case.

12         For those victims, who have had the very worst day of

13    their lives recorded for all time, and to have their images

14    from all over the world to be available on the Darknet, not

09:36:33 15    knowing, anywhere that they go, if someone has seen those

16    images, and that these images are out there forever; they

17    can never be eradicated, they can never be erased.

18         And the harm from those children from having the

19    sexual abuse committed on them never goes away.  Every

09:36:55 20    viewing, every receipt of those images, continues their

21    abuse.  And we'd ask this Court to hold the defendant

22    accountable for his conduct.

23         Thank you, Your Honor.

24              THE COURT:  Ms. Spaulding, anything?

09:37:07 25              PROBATION OFFICER:  No, Your Honor.  I have

1    nothing.

2            THE COURT:  Mr. McGinty, you may go back to

3    the podium.

4            MR. McGINTY:  Yes, Your Honor.

09:37:15  5            THE COURT:  And, of course, Mr. McGinty, you

6    always get the last word.

7            MR. McGINTY:  Yes.

8        Judge, I would just indicate one of Brian's --

9    Mr. McDonough's last statements about Congress's intent.

09:37:27 10        I would agree that Congress's intent has been to

11   double the sentences, and I've also noticed there's been a

12   contrast with the Sentencing Guideline Commission thinking

13   that there's not a lot of -- there's not a nexus between the

14   way they change the sentences and what they found in the

09:37:43 15   course of their sentencing.

16            THE COURT:  This Court has historically given

17   a downward variance in cases of this nature, and how many

18   levels depends upon a number of factors.

19        I certainly look at aggravating factors, such as the

09:38:11 20   length of time of the conduct.

21        I do look at the defendant's effort to hide the

22   conduct.

23        I have looked at whether or not the defendant has

24   acted on his desires.

09:38:28 25        I have, in fact, looked at criminal history.

1    I've also looked at the mitigating factors.

2    I look at family background.

3    I look at the fact that, generally speaking, guideline

4 ranges in these types of cases appear to be more severe when

09:38:53 5 compared to crimes that are equally serious, if not less

6 serious.

7    And I also look at an expression of remorse; a

8 defendant who gets it, who understands the seriousness and

9 the severity of the conduct and the impact the conduct has

09:39:25 10 on these young girls, who, as Mr. McDonough says, have to

11 relive probably the most horrible day of their lives over

12 and over and over again.

13    In this particular case, when I look at all of the

14 factors, I will begin with the mitigating factors.

09:39:56 15    This is a range that is a very serious range,

16 particularly compared to offenses equally serious or less

17 serious.

18    Strike that.

19    When I say "less serious," I meant to say more

09:40:16 20 serious.  Equally serious or more serious.  This is a range

21 that appears to be higher, generally speaking.

22    I look at the fact that the defendant's, according to

23 this report -- and I have to believe what I'm reading here,

24 unless given me evidence to the contrary -- defendant's

09:40:37 25 father gave up his parental rights when the defendant was

1    eight; a stepfather who was mentally and physically abusive;

2    his mother, who was an alcoholic and physically abusive;

3    mother's boyfriends, who were physically abusive.

4         I do know that the defendant has had a suicide

09:40:59 5    attempt.

6         So I look and take into consideration the family

7    background.

8         I take a look at the high range, guideline range, but

9    then I look at the aggravating factors.  And I had also

09:41:17 10   noted, as did Mr. McDonough, the length of time mentioned in

11   count 1.  I listened to the testimony, and I agree with

12   Mr. McDonough that there was a very sophisticated effort to

13   hide the conduct.

14        And I also look at the fact that the defendant does

09:41:38 15   have a prior criminal conviction for gross sexual

16   imposition; that he did, in fact, act on his desires with a

17   child.

18        When I take all of those factors into account, I

19   cannot justify the normal variance that I have done

09:42:06 20   historically in cases of this nature.  I can only justify a

21   one-level downward variance because of the fact that this

22   guideline range is so much higher than crimes that are even

23   of more seriousness.

24        But here I have a defendant who has expressed

09:42:34 25   absolutely no remorse whatsoever.  And very sadly,

1    everything I have heard from loved ones has really not

2    helped him come to grips with his conduct.

3          Therefore, it is the judgment of this Court, sir, that

4    you be committed to the custody of the Bureau of Prisons to

09:42:56  5    be in prison for a term of 235 months on each count, to be

6    run concurrently.

7          Upon release from imprisonment, you will be placed on

8    supervised release for a term of ten years, all counts to

9    run concurrently.

09:43:11  10          Within 72 hours of release from the custody of the

11    Bureau of Prisons, you must report in person to the

12    probation office in the district to which you're released.

13          I'm not ordering a fine, but there is a $300 special

14    assessment due and payable today.

09:43:24  15                    MR. McGINTY:  Judge, it will be 200 now?

16                    THE COURT:  Thank you, Mr. McGinty.  Thank

17    you.  $200 special assessment.

18          Thank you.

19          While on supervision, you must comply with all of the

09:43:34  20    mandatory and standard conditions that have been adopted by

21    this Court.  They are set forth in Part D of your report.

22          In addition, you're going to be drug tested.  You must

23    submit to -- while on supervision, to a drug test within 15

24    days of release from imprisonment.  You must submit to at

09:43:53  25    least two periodic drug tests thereafter.

1          You must participate in sex offense specific -- sex

2     offense-specific assessment.

3          You must participate in drug treatment and mental

4     health treatment as deemed appropriate by your officer.

09:44:11  5          You must submit to a warrantless search based only

6     upon reasonable suspicion of contraband or evidence of a

7     violation of a condition of release.

8          You must submit your computers or other electronic

9     communications or data storage devices or media to a search.

09:44:26 10          You are required to register under the Sex Offender

11    Registration and Notification Act and comply with all of

12    that -- the requirements of the Act.  Your officer will go

13    over all of those with you.

14          You may not view or possess any visual depiction,

09:44:44 15    including any photograph, film, video, picture, computer, or

16    computer-generated image or picture, whether made or

17    produced by electronic, mechanical, or other means, of

18    sexually explicit conduct.

19          You must participate in a sex offense-specific

09:45:01 20    treatment program.

21          You may not access the Internet except for reasons

22    approved in advance by your officer.

23          Let me inform you, sir, that you do have the right to

24    appeal your conviction and sentence.  If you cannot afford

09:45:14 25    to appeal, the cost will be borne by the Government.

1          I do, in fact, find the sentence to be sufficient but

2     not greater than necessary to satisfy the purposes of

3     sentencing.

4          I believe my explanation prior to my pronouncement of

09:45:27  5     sentence sufficiently addresses the 3553(a) factors and sets

6     forth my reason for a one-level downward variance.

7          Mr. McGinty, first of all, sir, any objections?

8               MR. McGINTY:  No, Your Honor.

9               THE COURT:  Secondly, anything further?

09:45:49 10               MR. McGINTY:  No, Your Honor.

11               THE COURT:  Mr. McGinty, I'm hearing loud and

12     clear that your client would like to appeal.

13               MR. McGINTY:  That's correct, Your Honor.

14               THE COURT:  And would you -- do you and your

09:46:01 15     client have a preference for me not to assign you?

16               MR. McGINTY:  Judge, I think, based upon where

17     I'm at in my life right now, that it would be best that we

18     get, like, the public defender.  He would love to have the

19     public defender represent him.

09:46:15 20               THE COURT:  I will, in fact, appoint the

21     federal defender.

22               MR. McGINTY:  Thank you, Your Honor.

23               THE COURT:  Anything else, Mr. McGinty?

24               MR. McGINTY:  Nothing, Your Honor.

09:46:21 25               THE COURT:  Mr. McDonough, first -- and

1    Ms. Miller, first of all, any objections?

2                    MR. McDONOUGH:  No objections, Your Honor.

3            The United States might have missed it, but was there

4    a condition of supervision, the no association with minors,

09:46:38  5    paragraph 97?

6                    THE COURT:  Thank you, Mr. McDonough.

7            Ms. Spaulding, I don't believe you have that -- wait.

8    I'm sorry.

9                    MR. McDONOUGH:  It's paragraph 97.

09:46:52 10                    THE COURT:  That's -- oh, that's under the

11    Mandatory and Special Conditions.  It's all of those.

12                    MR. McDONOUGH:  Oh, terrific.  Thank you,

13    Your Honor.

14                    THE COURT:  All of those, I have indicated.

09:47:05 15                    MR. McDONOUGH:  Wonderful.  No objections,

16    Your Honor.

17                    THE COURT:  Yeah.  Correct me if I'm wrong,

18    Ms. Spaulding, that those are all under Part D that I

19    referenced; am I right?

09:47:14 20                    PROBATION OFFICER:  In the presentence report,

21    that is correct, Your Honor.

22                    THE COURT:  Thank you.

23        Mr. McDonough, Ms. Miller, anything further?

24                    MR. MCDONOUGH:  Nothing further on behalf of

09:47:22 25    the United States, Your Honor.

1          THE COURT:  Ms. Spaulding, anything?

2          PROBATION OFFICER:  Nothing, Your Honor.

3          THE COURT:  Go ahead.

4          MR. McGINTY:  Nothing further, Your Honor.

09:47:35  5          THE COURT:  All right.  Good luck to you, sir.

6    Good luck to your family.

7          THE DEFENDANT:  Thank you.

8          MR. McDONOUGH:  Thank you, Your Honor.

9                    -  -  -

10          (Proceedings adjourned at 9:47 a.m.)

11

12

13              **C E R T I F I C A T E**

14

15     I certify that the foregoing is a correct transcript

16    from the record of proceedings in the above-entitled matter.

17

18    */s/ Donnalee Cotone _____12th of December, 2018*
      DONNALEE COTONE, RMR, CRR, CRC                    DATE
19    Realtime Systems Administrator

20

21

22

23

24

25